755 P.2d 56

**PRODUCTION CREDIT ASSOCIATION OF SOUTHERN NEW MEXICO, Plaintiff–Appellee,**

v.

**A.E. WILLIAMSON and Faye Williamson, Federal Land Bank of Wichita and All Unknown Claimants of Interest in the Premises Adverse to Plaintiff, Defendants–Appellants.**

**No. 17374.**

Supreme Court of New Mexico.

May 24, 1988.

Bozarth, Craig & Vickers, Marion J. Craig, III, Roswell, for plaintiff-appellee.

Templeman and Crutchfield, C. Barry Crutchfield, Lovington, for defendants-appellants.

**OPINION**

WALTERS, Justice.

Defendants A.E. Williamson and F. Williamson (the Williamsons) appeal the trial court's order denying their motion to set aside a special master's foreclosure sale of real property. The Williamsons were parties to the foreclosure proceedings and consented to the foreclosure judgment and decree. However, because they were not given personal, actual notice of the time and place of the foreclosure sale, they contend they were denied their interest in property without due process of law. The Williamsons also urge that SCRA 1986, 1–005 applies to notices of foreclosure sales and requires that they be given actual notice of the sale. We disagree with both contentions and affirm the trial court's order.

On March 19, 1986, plaintiff Production Credit Association of Southern New Mexico

(Credit Association) filed a complaint to initiate foreclosure proceedings. Credit Association held a note in the original principal sum of $446,459 executed by the Williamsons and secured by a mortgage on their Lea County ranch. At the time of default the remaining balance of principal and interest was $311,052. On January 7, 1987, almost nine months after Credit Association filed its complaint, the court entered a judgment and decree of foreclosure which had been approved by both parties. The judgment directed that the property be sold "pursuant to law" and by a special master. The applicable law for the sale of foreclosed property is NMSA 1978, Section 39–5–1. Pursuant to Section 39–5–1, and commencing on January 30, 1987, Credit Association published notice of the foreclosure sale in the local newspaper. It ran for four weeks, and included the time and place of the sale and a description of the property.

On March 2, 1987, the court-appointed special master conducted the sale of the real property in accordance with the judgment and decree of foreclosure, the proceeds from the foreclosure sale satisfying the Williamson's judgment and their indebtedness to Credit Association. Thereafter, the special master filed his report of sale along with an order approving and confirming the sale and directing delivery of the deed. The Williamsons' subsequent motion to set aside the special master's sale for failure of actual notice was denied because the court found that the sale had been conducted in compliance with the legal requirements for judicial sale and with the terms of the judgment of foreclosure, and that notice of sale had been given as required by statute.

According to the Williamsons, SCRA 1–005 mandates that they receive personal notice of the foreclosure sale. That rule provides that "every pleading subsequent to the original complaint * * * and every written notice, appearance, demand and similar paper shall be served upon each of the parties affected thereby * * * *" It is their argument that record owners should be given direct notice in accord with Rule 1–005 because notice of sale is a critical

notice and record owners of real property are "affected thereby." A similar claim was made and rejected in *United States v. New Mexico Landscaping, Inc.,* 785 F.2d 843 (10th Cir.1986) where loan guarantors claimed that their due process rights were violated because they had not been notified of the judgment's entry, nor of the foreclosure sale of the collateral. They asserted that constructive notice of the foreclosure sale by publication, as provided in Section 39–5–1, was insufficient to satisfy the direct notice requirement of Rule 1–005. The Tenth Circuit noted that Section 39–5–1 provides the only formal notice requirements for a judicial sale, and that if there were any holders of "residual" rights requiring personal notice of the sale, the guarantors had expressly waived such rights under the guarantee agreement. Observing that the lender had complied with Section 39–5–1, the court held that the guarantors had received sufficient notice of the foreclosure sale.

Section 39–5–1 explicitly and specifically addresses the kind of notice to be employed in cases of sales under execution and foreclosure. Rule 1–005, on the other hand, makes no specific reference to foreclosure sales. A well established principle of statutory construction recognizes that when one statute deals with a subject in general terms and another deals with a part of the same subject more specifically, the more specific statute will be considered an exception to the general statute, and will apply. *City of Alamogordo v. Walker Motor Co.,* 94 N.M. 690, 616 P.2d 403 (1980); *New Mexico Bureau of Revenue v. Western Elec. Co.,* 89 N.M. 468, 553 P.2d 1275 (1976); *State v. Spahr,* 64 N.M. 395, 328 P.2d 1093 (1958). Because of Section 39–5–1's specificity relating to foreclosure sales, and Rule 1–005's lack of it, Section 39–5–1 governs. Credit Association met the constructive notice provisions of Section 39–5–1.

The Williamsons next argue that the notice required by Section 39–5–1 is insufficient to satisfy the minimum constitutional requirements under the fourteenth amendment and the New Mexico Constitution.

They contend that, even though they were parties to the foreclosure action and approved the judgment and decree of foreclosure, they are owners of the property with a recorded interest and a known address and, therefore, they should have been given actual notice of the foreclosure sale. Only personal notice, they say, will protect their constitutional guarantee that they will not be deprived of property without due process of law. They cite *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), and *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), to claim that their status as property owners with a recorded interest in the property entitled them to actual, not merely constructive, notice of the foreclosure sale.

Those cases, however, and others that hold notice by publication constitutionally infirm, are cases in which persons other than parties to the foreclosure action, having a recorded interest in the property, were deprived of that property with absolutely no notice that their interests in the property had been foreclosed, and without a hearing concerning those interests. In *Mennonite,* a mortgagee's property interest was disposed of by a tax sale, in accordance with the statute but without a judicial hearing, upon posting of a notice of sale in the county courthouse, and after notice had been published in the local paper once a week for three consecutive weeks. The Court held that such notice denied due process to a recorded titleholder of property, and that actual notice of the imminent deprivation of property rights should be provided to any party in interest if the party's name and address were reasonably ascertainable. *Mennonite,* 462 U.S. at 800, 103 S.Ct. at 2712. But the Court also noted that the party foreclosing need not make extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identification is not in the public record. *Mennonite,* 462 U.S. at 798, n. 4, 103 S.Ct. at 2711, n. 4.

Similarly, in *Mullane,* under a New York statute a trust company could petition for judicial settlement of its accounts by publishing the trust company's name and address, and the name and date of establishment of a common trust fund, and the list of names of participating funds affected. That notice had the effect, after judicial settlement of the trust accounts, of severing the ability of anyone interested in the common trust to assert a claim against the trust company. The Supreme Court held that in any proceeding which is to be accorded finality, due process requires that notice must be given which is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657; *see also Wylie v. Patton,* 111 Idaho 61, 720 P.2d 649 (Idaho App.1986) (statute that required notice of sale to record owners, but not to mortgagee of record who was constructively notified by publication, was violative of the constitutional requirement of due process); *Seattle–First Nat'l Bank v. Umatilla Co.,* 77 Or.App. 283, 713 P.2d 33 (1986) (assignee of recorded beneficial interest in deed of trust who had no notice of the foreclosure proceeding, nor of the sale, but who could have requested notice by mail, had his constitutional right to due process violated when notice was by publication in a local newspaper).

All of the above cases, however, differ from the instant case in that they refer to interests of intervening mortgag*ees* or holders of an interest in the foreclosed property. Here, the Williamsons were the mortgag*ors* and had actively participated in the proceedings which resulted in the decree of foreclosure. The decree itself gave notice of an impending foreclosure sale. Accordingly, in cases where there was no actual notice but petitioner had been a party to the foreclosure action and had received constructive notice of sale by publication, the courts have refused to find a due process violation. For example, in *Family Savings & Loan Association v. Barkwood Landscaping Co., Inc.,* 93 Wis. 2d 190, 286 N.W.2d 581 (1980), a subordinate mortgagee and a lien claimant, parties to the foreclosure action and named in

the original complaint, argued that judgment of foreclosure had been entered without notice to them, that due process necessitated actual receipt of notice of the foreclosure sale, and that notice by posting and publication in the local paper pursuant to statute was constitutionally deficient. The court rejected the claim, holding that compliance with the posting and publication statute provided sufficient notice. Likewise, in *New Mexico Landscaping, Inc.,* the Tenth Circuit was impressed that although the guarantors of the loan had not received actual notice of the foreclosure sale but knew a foreclosure judgment would be entered against them, they had answered the lender's complaint and amended complaint, and had submitted argument against summary judgment. Their participation as a party in the foreclosure suit, together with constructive notice by publication, persuaded the court that they had been accorded the process due them. The court also noted, however, that even though the judgment of foreclosure had not been sent to the guarantors, the record indicated that the guarantors "had actual notice some two weeks prior to the impending sale." *Id.,* 785 F.2d at 849.

Though neither of the petitioners in *Family Savings* or *New Mexico Landscaping* had received actual notice of a foreclosure sale, it is significant that they had been served with notice of the proceedings; they had been named as parties to the foreclosure action; and they had had the opportunity to respond. Here the Williamsons were on notice by the judgment of foreclosure that their property would be sold imminently. They had been served with the complaint initiating the foreclosure action; they appeared at the foreclosure hearing, and they had the opportunity to be heard. They ultimately consented to the foreclosure judgment and decree. That judgment and decree, stipulated to and signed by them, provided that their property was to be sold "pursuant to law" and by a court-appointed special master. As previously noted, the statute applicable to sales under execution and foreclosure prescribes notice of sale by publication in a local newspaper for a period of four weeks.

Although appellants repeatedly refer to themselves as "title owners of record" at the time of the foreclosure sale, and thus entitled to Rule 1–005 notice as a party to litigation, appellants overlook the decree of foreclosure divesting them of "any right, title or interest in or to the property, except the right of redemption as provided by law." As to that right, the Williamsons stipulated they were unable to redeem the property. Thus, even the "right of redemption" was not injured by the sale conducted under constructive notice.

We are convinced that when a party with a recorded interest in property has been properly served and has had actual notice of a complaint in foreclosure, and participates in the proceedings to the extent of approving a judgment and decree of foreclosure directing sale of the foreclosed property, and thereafter is on constructive notice of the time and place of sale, he has received all due process to which he is entitled before being deprived of his interest in the property.

The judgment of the trial court is AFFIRMED.

SCARBOROUGH, C.J., and RANSOM, J., concur.